J-S36006-22

2023 PA SUPER 50

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
COREY LEE MCLENDON :
:
Appellant : No. 298 WDA 2022

Appeal from the Judgment of Sentence Entered November 24, 2021
In the Court of Common Pleas of Erie County
Criminal Division at No: CP-25-CR-0002584-2020

BEFORE: STABILE, J., KING, J., and COLINS, J.[*]

OPINION BY STABILE, J.: **MARCH 27, 2023**

Appellant, Corey Lee McLendon, appeals from the November 24, 2021 judgment of sentence imposing 75 to 150 months of incarceration for aggravated assault.[1] We affirm.

The trial court recited the pertinent facts and procedural history in its Pa.R.A.P. 1925(a) opinion:

> [Appellant] was originally charged with one count each of: strangulation, aggravated assault, simple assault, false imprisonment, harassment, terroristic threats (F3), and unlawful restraint; three counts of terroristic threats (M1); and two counts of possessing instruments of crime. The charges arose out of an incident wherein [Appellant] assaulted and terrorized his then-girlfriend over the course of two days by striking her in the face and body with his fist, throwing items at her with such force that

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 2702.

they broke upon hitting her, strangling her, holding a pair of scissors to her neck and slicing it superficially while threatening to kill her, beating her in the skull with a broomstick handle, and threatening to shoot up her father's residence where her two minor children lived.

Trial Court Opinion, 4/19/22, at 1.

The record reveals a contentious relationship between Appellant and his appointed counsel throughout this case. That relationship pervades the issues on appeal. At the originally scheduled preliminary hearing on September 17, 2020, Appellant refused to proceed because he did not wish to be represented by a public defender. The trial court continued the preliminary hearing for two months to give Appellant time to retain private counsel. As of the November 20, 2020 rescheduled preliminary hearing, Appellant had yet to retain private counsel. Instead, he objected to the rescheduled hearing because he had yet to sign a contract with his public defender, Michael A. DeJohn. N.T. Preliminary Hearing, 11/20/20, at 5-6. Appellant also claimed he had inadequate time to explain his defense to DeJohn. *Id.* DeJohn stated that his investigator talked to Appellant and asked him to sign an application to be represented by the public defender's office, but Appellant refused to sign it. *Id.* at 8. The trial court read a printed waiver of counsel form into the record, but Appellant refused to sign it, saying it was against his constitutional right. *Id.* at 10. The trial court declined to delay the preliminary hearing any further, and directed that Appellant proceed *pro se* at the preliminary hearing. *Id.* at 6, 8-10.

On August 6, 2021, Appellant pled guilty to aggravated assault in exchange for dismissal of all other charges. On October 11, 2021—the day of his scheduled sentencing hearing—Appellant filed a *pro se* motion to withdraw his plea. Appellant was represented by DeJohn at that time and did not ask DeJohn to file the motion on his behalf. As a result, the trial court delayed the scheduled sentencing and scheduled a hearing to address whether Appellant wished to withdraw and whether he wished to proceed with DeJohn. Two days later, on October 13, 2021, DeJohn petitioned to withdraw.

At an October 26, 2021 hearing, the trial court permitted counsel to withdraw and permitted Appellant to argue his plea withdrawal petition *pro se*. The trial court did not conduct a waiver of counsel colloquy pursuant to Pa.R.Crim.P. 121.[2] Sentencing was scheduled for November 24, 2021. On November 23, 2021, the day before the scheduled sentencing, the trial court conducted a telephone hearing on Appellant's claim that he recently tested positive for Covid. Appellant's testimony about the timing and documentation of his alleged positive rapid test (or tests) varied, and he was unable to forward electronic verification to the court. The trial court determined the next day's sentencing hearing would proceed as scheduled unless Appellant appeared with documentation of his positive Covid test. Appellant appeared for the November 24, 2021 sentencing without any such documentation and

---

[2] Rule 121(A)(2) states mandatory areas of inquiry before a trial court may permit a criminal defendant to proceed without counsel.

admitted on the record that he had tested negative for Covid. The trial court imposed sentence as set forth above. Appellant filed post-sentence motions and this timely appeal with the assistance of private counsel.

Appellant presents three questions:

1. Whether the trial court erred in denying Appellant's pre-sentence motion to withdraw his guilty plea where the record establishes that the plea was never voluntary and there would have been no prejudice to the Commonwealth had the court granted the motion?

2. Whether the trial court erred in finding either forfeiture or waiver of the right to counsel and requiring Appellant to proceed *pro se* where Appellant showed that he and his court-appointed attorney suffered from irreconcilable differences, Appellant could not afford private counsel, Appellant did nothing to significantly delay the proceedings, and the trial court failed to conduct the required colloquy before requiring Appellant to proceed *pro se*?

3. Whether the trial court abused its discretion and erred in considering improper factors and sentencing Appellant to an excessive, unreasonable sentence?

Appellant's Brief at 8.[3] We consider these issues in turn.

The law governing pre-sentence plea withdrawals is well-settled. Rule 591 permits withdrawal of a plea as follows: "At any time before the imposition of sentence, the court may, in its discretion, permit, upon motion of the defendant, […] the withdrawal of a plea of guilty […] and the substitution of a

_____

[3] We note with extreme disapproval that the Commonwealth failed to file a brief in this case, even after requesting and receiving an extension of time within which to do so.

plea of not guilty." Pa. R. Crim. P. 591(A).[4] Thus, the standard for pre-sentence plea withdrawal is a very liberal one, governed by the following considerations:

> (1) there is no absolute right to withdraw a guilty plea; (2) trial courts have discretion in determining whether a withdrawal request will be granted; (3) such discretion is to be administered liberally in favor of the accused; and (4) any demonstration by a defendant of a fair-and-just reason will suffice to support a grant, unless withdrawal would work substantial prejudice to the Commonwealth.

*Commonwealth v. Garcia*, 280 A.3d 1019, 1023 (Pa. Super. 2022). "The trial courts in exercising their discretion must recognize that before judgment, the courts should show solicitude for a defendant who wishes to undo a waiver of all constitutional rights that surround the right to trial—perhaps the most devastating waiver possible under our constitution." *Commonwealth v. Elia*, 83 A.3d 254, 262 (Pa. Super. 2013) (internal quotation marks omitted), *appeal denied*, 94 A.3d 1007 (Pa. 2014). We will not reverse a trial court's decision absent abuse of discretion. *Id.* at 261.

Appellant relies on *Elia*, wherein the defendant attempted to withdraw his plea of guilty to involuntary deviate sexual intercourse and statutory sexual assault. As in the instant case, the defendant's withdrawal motion was *pro se*. *Id.* at 258. He also alleged ineffective assistance of counsel and requested

---

[4] Rule 590 of the Pennsylvania Rules of Criminal Procedure governs guilty pleas and plea agreements, and the official comment thereto lists seven inquiries for the trial court to make at a plea colloquy. Pa.R.Crim.P. 590

new counsel. *Id.* The trial court permitted the defendant to withdraw the plea, but substitute counsel eventually sought to withdraw the withdrawal and have the plea agreement reinstated. *Id.* at 261. On appeal, the defendant claimed the trial court erred in permitting withdrawal based on an assertion of innocence when the defendant did not actually assert his innocence. *Id.* at 263. This Court agreed that it was unclear that the defendant asserted his innocence, but his assertions that counsel bullied him, and that he wanted to test the sufficiency of the Commonwealth's evidence, were fair and just reasons to permit withdrawal of the plea. Thus, the *Elia* Court concluded that the trial court did not abuse its discretion in permitting plea withdrawal or in denying substitute counsel's request to reinstate the original plea agreement.

Here, Appellant claims he should have been permitted to withdraw his plea because he had a poor relationship with counsel and entered the plea under duress. Given these apparent similarities between this case and *Elia*, Appellant argues the trial court abused its discretion in denying his petition to withdraw his plea. We disagree.

While the instant record reflects a strained relationship between Appellant and his counsel, there is no indication in the record that Appellant believed the Commonwealth's evidence was insufficient or that he wished to test the Commonwealth's evidence. The record establishes the contrary.

At the outset of the plea hearing, Appellant agreed that he was pleading guilty to aggravated assault in exchange for the Commonwealth's agreement

to *nolle pros* the remaining charges against him.  N.T. Guilty Plea, 8/6/21, at

7.  After the prosecutor recited the facts supporting the plea, Appellant signed

a document indicating his guilty plea.  ***Id.*** at 8-9.  Appellant indicated his

understanding of plea agreement and the elements of his offense, and he

agreed that he was guilty.  ***Id.*** at 9-10.

At that point, the following exchange occurred:

> THE COURT:  Anyone forcing you to do this or promise you anything or threaten you anything [sic]?
>
> THE DEFENDANT:  No, but I am signing under duress.  First I have to – that I have reasons of my own the reason I want to speak on the record today.
>
> THE COURT:  Okay, well, this is a plea, I mean I don't know if you – you have to admit one way or the other whether you're guilty or not.
>
> THE DEFENDANT:  I mean I – well, yea, **I'm admitting, I'm admitting guilt.**
>
> THE COURT:  All right.
>
> THE DEFENDANT:  **I am saying that I am guilty.**  But as you can see the documents, I have signed it under duress.  There's discrepancies in this case that have not been followed and there's been protocol that the DA's office, as well as Mr. DeJohn [defense counsel], has totally missed.
>
> […]
>
> THE COURT:  I just want to make sure you're –
>
> THE DEFENDANT:  I'm fully aware.
>
> THE COURT:  **Is it still your intention to –**
>
> THE DEFENDANT:  **Yes.**
>
> THE COURT:  -- **plead guilty?**

THE DEFENDANT: **Yes. My only intentions [sic] was to get a plea deal period.** It's just the process that the DA's office and Mr. DeJohn has going that – again, this is the reason why I want to speak on open record. So it is on also [sic] record because nobody seems to want to get back to me on the things that have gone on in this case or hear the things that I have to say, so this is my time to speak on the record so I can get those things out there.

THE COURT: All right, now, what's going to happen is there's going to be a sentencing on October 11th at 9:00 a.m. I'm not going to sentence you today.

THE DEFENDANT: Okay.

THE COURT: That will be in front of Judge Ridge and you can say anything you need to on your own behalf –

THE DEFENDANT: Okay.

THE COURT: -- at that time.

THE DEFENDANT: Cool.

*Id.* at 10-12.

Thus, Appellant was consistently clear about his guilt and his wish to plead guilty. He nonetheless wished to go on the record venting his frustration with defense counsel and the prosecutor. The trial court concluded by informing Appellant that he would have an opportunity to speak on his own behalf at sentencing, and Appellant indicated his satisfaction with that arrangement. There is no indication that Appellant's apparent dissatisfaction at the communication between himself and defense counsel affected Appellant's decision to enter a guilty plea. Furthermore, as we will discuss regarding Appellant's second assertion of error, Appellant's disagreements with counsel and dilatory behavior persisted throughout the trial court

proceeding. His vague assertions of dissatisfaction with counsel at his guilty plea colloquy, detailed above, are just one example. We discern no abuse of discretion in the trial court's denial of Appellant's motion to withdraw his guilty plea.

In his second assertion of error, Appellant claims the trial court erred in permitting him to proceed *pro se* after the withdrawal of counsel because the trial court failed to conduct a waiver of counsel colloquy. In the alternative, Appellant argues the trial court erred in determining that Appellant's obstructive and dilatory conduct resulted in the forfeiture of his right to counsel. Because the trial court never conducted a waiver-of-counsel colloquy in this case, and because the trial court found instead that Appellant forfeited his right to counsel (Trial Court Opinion, 4/19/22, at 6), we confine our analysis to forfeiture.

The Sixth Amendment to the United States Constitution and Article I, § 9 of the Pennsylvania Constitution guarantees a criminal defendant the right to assistance of counsel. "However, the constitutional right to counsel of one's own choice is not absolute." **Commonwealth v. Lucarelli**, 971 A.2d 1173, 1178 (Pa. 2009). "Rather, the right of an accused individual to choose his or her own counsel, as well as a lawyer's right to choose his or her clients, must be weighed against and may be reasonably restricted by the state's interest in the swift and efficient administration of criminal justice. **Id**. "Thus, while defendants are entitled to choose their own counsel, they should not be

permitted to unreasonably clog the machinery of justice or hamper and delay the state's efforts to effectively administer justice." *Id.* at 1179. Forfeiture of counsel does not require the intentional relinquishment of a right, as in the case of waiver. *Id.* Forfeiture is the result of a defendant's "extremely serious misconduct" or "extremely dilatory conduct." *Id.* (quoting *United States v. Thomas*, 357 F.3d 357, 362 (3d Cir. 2004)). Where a defendant forfeits his right to counsel, Pa.R.Crim.P. 121 and its waiver colloquy requirements do not apply. *Id.* The alleged denial of a constitutional right is a question of law for which our standard of review is *de novo* and our scope of review is plenary. *Lucarelli*, 971 A.2d at 1178.

Our Supreme Court addressed forfeiture of counsel in *Lucarelli*. There, after the hiring and withdrawal of two attorneys, the trial court provided the defendant with an application for a public defender. *Lucarelli*, 971 A.2d at 1176. The defendant did not file the application and then failed to appear for jury selection. *Id.* at 1177. The trial court rescinded its bench warrant after the defendant appeared and filed a *pro se* motion for the appointment of counsel. *Id.* The trial court did not appoint counsel, instead reducing the defendant's bail by $20,000 and directing him to use that money to hire counsel. *Id.* Appellant subsequently appeared for trial without an attorney and proceeded *pro se* with assistance of stand by counsel.

The *Lucarelli* Court concluded that the defendant forfeited his right to counsel. "[W]here a defendant's course of conduct demonstrates his or her

intention not to seek representation by private counsel, despite having the opportunity and financial wherewithal to do so, a determination that the defendant be required to proceed *pro se* is mandated because that defendant has forfeited the right to counsel." ***Id.*** at 1179. The Supreme Court held that the defendant engaged in extremely dilatory conduct because he had more than 8½ months to prepare for trial, had hired several attorneys who withdrew their representation, and was given access to $20,000 shortly before trial with which to obtain counsel. ***Id.*** at 1180. The trial court therefore did not err in forcing the defendant to proceed *pro se*.

This Court in ***Commonwealth v. Kelly***, 5 A.3d 370 (Pa. Super. 2010), ***appeal denied***, 32 A.3d 1276 (Pa. 2011), considered forfeiture of counsel in the case of an indigent defendant. After pleading guilty, the defendant filed a *pro se* seeking withdrawal of his plea and challenging plea counsel's effectiveness. ***Id.*** at 372. The trial court granted the plea withdrawal motion and ordered appointed counsel to serve as standby counsel. ***Id.*** at 373. On the day of trial, the defendant alleged an irreconcilable breakdown between himself and standby counsel. He requested appointment of another attorney to represent him at trial. ***Id.*** at 373-74. The trial court continued the trial and appointed another attorney. ***Id.*** at 374. One month later, the newly appointed attorney filed a petition to withdraw, alleging that the defendant was uncooperative and had accused counsel of working for the Commonwealth and repeatedly lying to the defendant. ***Id.*** After a hearing, the trial court

permitted counsel to withdraw and ordered the defendant to proceed *pro se*. *Id.* at 376. The trial court did not conduct a waiver colloquy pursuant to Rule 121. *Id.* at 378. The defendant eventually pled guilty again. *Id.* at 376.

On appeal, the defendant argued, among other things, that he did not waive or forfeit his right to counsel. The *Kelly* Court disagreed, noting that the defendant failed to cooperate with all three lawyers assigned to him and repeatedly accused them of ineffective assistance. *Id.* at 381. The defendant "wanted a counsel, but only one who would please him"[.]: *Id.* The *Kelly* Court quoted the following with approval:

> We have recognized a right of a defendant to proceed without counsel and to refuse the representation of assigned counsel…. He may not use this right to play a 'cat and mouse' game with the court … or by ruse or stratagem fraudulently seek to have the trial judge placed in a position where, in moving along the business of the court, the judge appears to be arbitrarily depriving the defendant of counsel.

*Id.* (quoting *United States ex rel. Davis v. McCann*, 386 F.2d 611, 618-19 (2d Cir. 1967), *cert. denied*, 390 U.S. 958 (1968)). *See also*, *Commonwealth v. Coleman*, 905 A.2d 1003 (Pa. Super. 2006) (holding that that the defendant forfeited her counsel after hiring and dismissing several attorneys and refusing to hire another), *appeal denied*, 923 A.2d 409 (Pa. 2007); *but see Commonwealth v. Fill*, 202 A.3d 133 (Pa. Super. 2019) (holding that the defendant did not forfeit his right to counsel where, after an initial disagreement with the public defender, the defendant maintained the same court-appointed counsel throughout the remainder of the case).

As explained above, the instant record reflects that the trial court continued the preliminary hearing for two months after Appellant asked for time to retain private counsel. In the interim, Appellant did not retain private counsel and refused to sign an application to be represented by the public defender's office. At the rescheduled preliminary hearing, Appellant declined to be represented by the public defendant and declined to sign the waiver of counsel for the trial court read into the record. The trial court declined to delay the preliminary hearing any further, and directed that Appellant proceed *pro se* at the preliminary hearing. N.T. Preliminary Hearing, 11/20/20, at 6, 8-10.

After his August 6, 2021 counseled guilty plea, Appellant, on October 11, 2021—on the morning of his scheduled sentencing—filed a *pro se* motion to withdraw his guilty plea, claiming, among other things, that DeJohn "ushered" him into a guilty plea without sufficient investigation of the case. Shortly thereafter, on October 13, 2021, DeJohn filed a petition to withdraw as counsel, citing the deterioration of his relationship with Appellant and Appellant's repeated attempts to undermine the judicial process.

The trial court conducted a hearing on these matters at the beginning of the previously scheduled October 11, 2021 sentencing hearing. The trial court first explained to Appellant that he had not read Appellant's *pro se* plea withdrawal request because Appellant was still represented by counsel. N.T. Hearing, 10/11/21, at 4. DeJohn stated that he did not believe withdrawal of

- 13 -

the guilty plea was warranted and noted that a waiver of counsel colloquy would be necessary if Appellant wished to proceed without him. *Id.* at 5. Appellant objected to the sentencing proceeding, claiming alternately that he was unrepresented or that DeJohn was ineffective. *Id.* at 7-9, 15-17. The prosecutor noted that she was unaware of Appellant's *pro se* plea withdrawal request until the beginning of the scheduled sentencing hearing. *Id.* at 6. She also noted that the victim was present and that a delay would be a burden to her. *Id.* Finally, the prosecutor noted that Appellant had used the same tactic—demanding different counsel—to delay his preliminary hearing by two months. *Id.* at 11. The trial court elected to schedule another hearing to address Appellant's pre-sentence motion to withdraw his plea, and to determine whether Appellant would proceed *pro se* or with private counsel. *Id.* at 18. Appellant was informed that if he intended to proceed with private counsel, he would need to have private counsel present at the next hearing. *Id.* at 19.

On October 26, 2021, more than two weeks after the originally scheduled sentencing hearing, the parties proceeded to a hearing on Appellant's petition to withdraw his guilty plea and DeJohn's motion to withdraw as counsel. Appellant claimed, alternatively, that DeJohn was never his counsel, that DeJohn was ineffective, and that his *pro se* filings were necessary because DeJohn failed to respond to Appellant's calls to the public defender's office. N.T. Hearing, 10/26/21, at 2, 4-6, 12. He also accused

DeJohn and the prosecutor of impersonating government officials. *Id.* at 6. The trial court found Appellant's arguments frivolous and permitted DeJohn to withdraw. *Id.* at 7. The court then permitted Appellant to argue his motion to withdraw his guilty plea without conducting any further colloquy. *Id.* at 7.

The next proceeding was a pre-sentence telephone hearing regarding Appellant's medical condition. Appellant claimed he was exposed to Covid and that two of his three rapid tests came back positive. N.T. Hearing, 11/23/21, at 2-3. Appellant claimed he had documentation from an urgent care documenting his positive results. *Id.* at 4. The court offered several means by which Appellant could document his illness for the court, but Appellant failed to do so. *Id.* at 12, 16-18.

At the sentencing hearing the following day, Appellant admitted he never tested positive for Covid. N.T., 11/24/21, at 10. Appellant claimed he did not understand how he was *pro se*, and the trial court reminded him of his counsel's withdrawal. *Id.* at 5. In his statement to the court, Appellant claimed he did not understand why he was there and challenged the court's jurisdiction on grounds that there was never an arrest warrant. *Id.* at 14. Nonetheless, Appellant maintained that he wanted to take accountability for his actions, but also claimed that the victim was at least partially at fault ("I know what I've done wrong, just like the victim knows what she's done wrong."). *Id.* at 15.

In summary, Appellant never cooperated with DeJohn from before the preliminary hearing up through counsel's eventual withdrawal. Appellant's conduct delayed the preliminary hearing by two months. Then, after his guilty plea and on the morning of his scheduled sentencing, Appellant filed a *pro se* plea withdrawal motion. That motion delayed the sentencing proceeding and precipitated DeJohn's petition to withdraw as counsel. Appellant expressed his desire to retain private counsel and did not do so, despite the trial court's warning that it would not delay the proceedings any further if Appellant arrived without counsel. Finally, Appellant, now acting *pro se*, tried to further delay his sentencing with a false claim that he tested positive for Covid. Appellant throughout these proceedings, commencing with his preliminary hearing and continuing through sentencing, played his request to have counsel and then not to have DeJohn as counsel to delay and obstruct these proceedings. Under these circumstances, we discern no error in the trial court's finding of forfeiture of counsel.

Here, as in **Lucarelli**, Appellant's refusal to cooperate with counsel and the trial court persisted throughout the trial court proceeding. And while Appellant had only one lawyer in this case, whereas the defendants in **Lucarelli** and **Kelly** had several, the end result was the same—unnecessarily drawn out proceedings brought about by a defendant's refusal to cooperate with counsel. Appellant's dilatory conduct spanned eleven months in this case, whereas the **Lucarelli** Court found forfeiture based on the defendant's 8½

month course of conduct. We therefore conclude that the dismissal and/or withdrawal of multiple attorneys, while common in forfeiture of counsel cases, is not a necessary precursor to concluding that a defendant has forfeited the right to counsel. Our focus is upon a defendant's conduct and not on the number of counsel that may lead to a forfeiture decision. The duration and persistence of the defendant's dilatory conduct, and the delays occasioned thereby, can lead to forfeiture of counsel even though only one attorney was involved in the case. Here, as in **Kelly**, Appellant engaged in a "cat and mouse game" throughout the trial court proceeding and now claims that the trial court, to bring the case to a conclusion, arbitrarily deprived Appellant of the right to counsel. **Kelly**, 5 A.3d at 381 (quoting **McCann**).[5]

In addition, we are mindful of the Commonwealth's assertion that Appellant was playing games not only with the trial court, but with the victim. At the November 23, 2021 telephone hearing, at which Appellant was attempting to prolong his sentencing hearing with his false claim of a positive Covid test, the prosecutor explained that the case had become "borderline unbearable for the victim[,]" who was prepared to appear at sentencing the

---

[5] We are cognizant that the **Lucarelli** Court cabined its analysis to cases in which the defendant had the means to procure private counsel. **Kelly**, however, expanded the forfeiture of counsel analysis to include indigent defendants. The instant record demonstrates that Appellant was eligible for a public defender, inasmuch as the trial court appointed DeJohn to represent him. Nonetheless, Appellant retained private counsel to file post-sentence motions and to represent him on appeal. Appellant's financial status is not pertinent to our disposition of this appeal.

following day and put the matter at an end. N.T Hearing, 11/23/21, at 11-12. This after the victim was present for the previously scheduled sentencing hearing which was delayed by Appellant's plea withdrawal petition on the morning of.

In support his argument that he did not forfeit his right to counsel, Appellant relies on *Commonwealth v. Neal*, 563 A.2d 1236 (Pa. Super. 1989), *appeal denied*, 575 A.2d 564 (Pa. 1990), in which the defendant asked for dismissal of counsel and appointment of new counsel after jury selection. *Id.* at 1239. The defendant claimed he lacked confidence in his first appointed attorney to represent his best interests. *Id.* The trial court noted that the defendant's allegations indicated a long-standing problem, yet the defendant did not raise them until the commencement of trial. *Id.* The trial court dismissed the defendant's counsel but refused the defendant's request to appoint another attorney, which would have delayed the trial. *Id.* Instead, the defendant was forced to proceed *pro se* with the assistance of appointed standby counsel to answer the defendant's procedural questions. *Id.* at 1240-41. The *Neal* Court opined that the trial court would not have abused its discretion in refusing the defendant's request to dismiss the public defender. *Id.* at 1242. But forcing the defendant to proceed *pro se* without a proper waiver of counsel colloquy was error, as the defendant clearly stated he did not wish to proceed *pro se*. *Id.* at 1243.

> Appellant may not frustrate or obstruct the orderly procedure of the court and the administration of justice by

continual insistence o[n] representation by private counsel, even though unable to afford such representation, or the continual refusal of the services of the public defender. However, as in the instant case, the intransigent behavior by the appellant does not negate the requirement for a full and complete colloquy in order that appellant may make a competent and intelligent waiver of his right to counsel.

*Id.* (quoting **Commonwealth v. Grant**, 323 A.2d 354, 358-59 (Pa. Super. 1974) (citations omitted).

Appellant claims **Neal** is directly on point because, regardless of his intransigent behavior in this case, the trial court failed to conduct a proper waiver colloquy. Appellant's reliance on **Neal** is misplaced, in our view, however, because it is a waiver of counsel rather than a forfeiture case. Furthermore, the facts of **Neal** are distinct, as there is no indication in the **Neal** opinion that the defendant's repeated lack of cooperation with counsel resulted in repeated delays throughout an unnecessarily prolonged proceeding. Rather, the defendant in **Neal** decided on the eve of trial that he lack confidence in his attorney.

Based on all the foregoing, we discern no error in the trial court's finding that Appellant forfeited his right to counsel.

In his final argument, Appellant challenges the trial court's sentencing discretion. He argues the trial court relied on improper factors in imposing an excessive sentence. We disagree.

In order to preserve a challenge to the trial court's sentencing discretion, an appellant must raise it in a post-sentence motion or during the sentencing

proceeding. The appellant must also file a timely notice of appeal and the appellate brief must include a concise statement of the reasons relied upon for allowance of appeal, pursuant to Pa.R.A.P. 2119(f). The Rule 2119(f) statement must explain why the argument presents a substantial question to the trial court's exercise of sentencing discretion. If the appellant fails to comply with any of the foregoing, we will not address the issue on its merits. *Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa. Super. 2010). "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process. *Id.* Here, Appellant claims the sentence was disproportionate to his conduct and that the trial court failed to articulate reasons to support it. Appellant's Brief at 17-18. Appellant also argues the trial court relied on improper factors. Appellant's Brief at 18. These assertions raise a substantial question. *Commonwealth v. Parlante*, 823 A.2d 927, 929-30 (Pa. Super. 2003); *Commonwealth v. Bowen*, 975 A.2d 1120, 1122 (Pa. super. 2009).

Turning to the merits, we review for abuse of discretion.

An abuse of discretion is more than a mere error of judgment; thus, a sentencing court will not have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will. In more expansive terms, our Court recently offered: An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality,

- 20 -

prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.

The rationale behind such broad discretion and the concomitantly deferential standard of appellate review is that the sentencing court is in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it.

*Moury*, 992 A.2d at 169–70 (quoting *Commonwealth v. Walls*, 926 A.2d 957, 961 (Pa. 2007)).

The trial court explained its sentence as follows:

A review of the sentencing proceeding indicates that this court took all appropriate factors into consideration prior to determining and pronouncing sentence. The defendant's background and rehabilitative potential were reviewed as was the impact of the crime upon the victim, as well as the protection of the community. With a prior record score of "1" and an offense gravity score of "11", the standard range minimum periods of incarceration were 51 months in the lower end, and 69 months in the upper end of the standard range. An aggravated range sentence had a minimum period of 81 months of incarceration. Deadly Weapon Enhancement was applied and a written notice of DWE was provided in the defendant's statement of understanding of rights, which was executed by the parties on August 16, 2021, before Judge Mead.

Therefore, the sentence of 75 months to 150 months was neither excessive nor unreasonable. This was a very serious, violent crime and the specific sentence was appropriate and took all factors into consideration.

Trial Court Opinion, 2/23/22, at 2.

Appellant argues that, in relying on Appellant's lack of remorse, the trial court effectively used Appellant's silence against him. He cites *Bowen* for the proposition that the sentencing court may consider lack of remorse but may not hold the defendant's silence against him. *Bowen*, 975 A.2d at 1122.

Appellant's reliance on **Bowen** is misplaced. The trial court did not discern Appellant's lack of remorse from his silence, but from his statements. At the sentencing hearing, Appellant said, "I know what I've done wrong, just like the victim knows what she's done wrong." N.T. Sentencing, 11.24.21, at 15. Thus, Appellant admitted wrongdoing but in the same breath placed blame on the victim. The trial court did not abuse its discretion in finding that Appellant lacked remorse.

Next, Appellant relies on **Commonwealth v. Rhodes**, 990 A.2d 732 (Pa. Super. 2009), **appeal denied**, 14 A.3d 827 (Pa. 2010), wherein this Court vacated the judgment of sentence because the trial court obtained police reports never admitted into evidence and relied on their contents in fashioning a sentence. Instantly, Appellant complains that the sentencing court received a previously undisclosed letter from the victim's friend. Appellant's Brief at 41. Appellant does not note whether he objected to the letter at sentencing, nor does he discuss the substance of the letter, or any evidence that the letter influenced the sentence imposed. Appellant has failed to articulate any basis on which he is entitled to relief on this basis.

For the foregoing reasons, Appellant's challenge to the trial court's exercise of sentencing discretion fails.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  3/27/2023